UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHELSEA BOURNE,

                        Plaintiff,                    Case Number 16-10332

v.                                                Honorable David M. Lawson

ANSARA RESTAURANT GROUP, INC.,
CLINTON ROBIN, INC., VICTOR L.
ANSARA, RED ROBIN OF MICHIGAN,
ANN ARBOR ROBIN, INC., COMMERCE
TOWNSHIP ROBIN, INC., DELTA
ROBIN, INC., DETROIT ROBIN, INC.,
FLINT ROBIN, INC., GRANDVILLE
ROBIN, INC., HOLLAND TOWNSHIP
ROBIN, INC., KENTWOOD ROBIN, INC.,
LIVONIA ROBIN, INC., MADISON
HEIGHTS ROBIN, INC., NORTON SHORES
ROBIN, INC., NOVI ROBIN, INC., PITTSFIELD
ROBIN, INC., PORTAGE ROBIN, INC.,
ROSEVILLE ROBIN, INC., SOUTHGATE
ROBIN, INC., TROY ROBIN, INC.,
WESTLAND ROBIN, INC., and BRIGHTON
ROBIN, INC.,

                        Defendants.
_____/

## ORDER GRANTING FINAL APPROVAL OF
## CLASS SETTLEMENT AND PLAN OF ALLOCATION AND DISMISSING CASE

Pursuant to notice, the Court conducted a fairness hearing on November 23, 2016 to

determine whether a settlement agreement should be given final approval on behalf of the certified

settlement class in this case. The Federal Rules of Civil Procedure require court approval of

settlements in class actions. Fed. R. Civ. P. 23(e). Rule 23(e) states that "[t]he claims, issues, or

defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the

court's approval." Rule 23(e)(2) states that "[i]f the proposal would bind class members, the court

may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." As a

part of this process, "[a]ny class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval." Fed. R. Civ. P. 23(e)(5). The approval of a proposed settlement ordinarily involves a two-stage procedure. "First, counsel submit the proposed terms of the settlement and the judge makes a preliminary fairness evaluation. . . . Once the judge is satisfied as to the . . . results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members." Manual for Complex Litigation § 23.632-.633 (4th ed.); *see also Tennessee Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565 (6th Cir. 2001).

On August 26, 2016, the Court granted preliminary approval of the settlement agreement under Federal Rule of Civil Procedure 23(e). The Court entered an amended order granting preliminary approval, accelerating the date for the approval hearing. The order directed that a written notice to the class be given by September 2, 2016 via first-class mail. Plaintiffs' counsel retained Simpluris, Inc. of Costa Mesa, California as the agent of the named plaintiff and class counsel to give notice in the manner approved by the Court, and ultimately to administer the settlement, process claims, and make distributions. The Court approved the retention of Simpluris, Inc. as the settlement administrator.

Under the order preliminarily approving the class settlement, absent class members were given until October 17, 2016 to opt out of the settlement or file objections. The parties identified a potential settlement class consisting of 2,226 members. Simpluris, Inc.'s Settlement Administrator Jarrod Salinas has certified that as of September 2, 2016, the Settlement Administrator sent Notice and Claim Form Packets to 2,171 class members via first-class mail, and that class counsel sent

settlement notification letters to 55 opt-in plaintiffs.   In addition, on September 2, 2016 the Settlement Administrator sent Notice and Claim Form Packets via email to 1,936 class members.

As of the date of the hearing on the final approval of the settlement on November 23, 2016, no class member objected to the terms of the proposed settlement, and one member requested to be excluded from the class.   No absent class member requested an opportunity to address the Court regarding the settlement at the final fairness hearing.   Simpluris represents that as of November 11, 2016, 559 class members, 54 opt-in plaintiffs, and the named plaintiff filed claims, for a total of 614 claimants.

As noted in the order preliminarily approving the settlement, the settlement class consists of all current and former Red Robin servers who worked for the various defendants in Michigan at any time from February 1, 2014 until entry of the Preliminary Approval Order.   The settlement class applies only to the plaintiff's (and absent plaintiffs') state law claims, and to those plaintiffs who have opted into the case under the FLSA.   It does not include any FLSA claims for the absent plaintiffs.   The settlement agreement calls for the defendants to establish a settlement fund of up to $445,000 to pay claims by the plaintiff and class members, with the additional condition that the defendants would pay at least $180,000 to claimants, net of costs, attorney's fees, and settlement administrative expenses. Each class member who submitted a timely claim originally was to receive a payment of 28 cents per hour for each hour that he or she worked for any of the defendants within the State of Michigan during the class period.   In exchange, the plaintiff would dismiss the case with prejudice and release all of the individual and class claims.

The defendants represented that the total number of hours worked by all 2,226 servers during the class period was 1,567,650, within a 10% margin of error.   The 614 claimants represent a

participation rate 27.6%, and they have submitted claims for approximately 562,500 hours, which is approximately 35.9% of the number of hours worked during the class period. Because of the provision for a minimum payout, each claimant will receive 32 cents per hour for each hour worked for any of the defendants within the State of Michigan during the class period. According to the Settlement Administrator, the highest share for any claimant will be $1,531.47 and the average share will be $293.12. The named plaintiff will receive a banner award of $5,000. Moreover, the Settlement Administrator, Simpluris, Inc., will receive and process the claims, and the defendants will pay the expenses of settlement administration, which Simpluris estimates to be $32,286.

At the fairness hearing, no one raised any objections to the settlement or appeared in opposition. After hearing a presentation by counsel, the Court made findings on the record, addressing the factors set forth in *International Union, United Automobile, Aerospace, & Agricultural Implement Workers of America v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007), which are "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Ibid.* The Court finds that the likelihood of collusion or fraud is minimal, as discussed further below. The case is complex and involved multiple defendants operating under the umbrella of the Red Robin restaurant chain, but with separate management structures; a trial, therefore, likely would be protracted. The parties engaged in extensive discovery, as outlined in the plaintiff's brief filed in support of the motion for final approval of the settlement. The merits question is far from settled; each side has advanced potentially meritorious issues on the questions whether some or all of the defendants actually

-4-

required their servers to participate in a tip-sharing program, and whether certain employees who received the shared tips — known as "food expediters" — could participate lawfully in such a program. Class counsel and the named plaintiff strongly urge approval of the settlement. Absent class members are silent in opposition, and the participation rate of claimants mirrors a typical rate seen in similar litigation. Finally, the interest of the public is served when wage-and-hour class actions successfully redress claims of small value that otherwise would not justify the costs of extended federal litigation. The Court concluded, therefore, that the settlement was fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2).

The Court expressed concern, however, that the attorney's fee negotiated by counsel for the parties overstated the value of plaintiff's counsel's contribution and might suggest evidence of collusion. However, the plaintiff has filed a supplemental brief addressing the point, and the Court is convinced that the possibility of collusion is quite remote. This is not a case in which the settlement metes out marginal or illusory benefits on the class and bestows a generous reward upon counsel. *See In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013) (criticizing class settlements in which there are "'subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations'") (quoting *Dennis v. Kellogg Co.,* 697 F.3d 858, 864 (9th Cir. 2012)). Rather, the settlement confers genuine monetary benefits on the absent plaintiffs that can be calculated objectively, and which reflect a considered decision taking account of the maximum possible recovery and the relative risk of failure of the claims. Although the Court has an undelegable duty to ensure that the class settlement is "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e)(2), and must "scrutinize" the proposed settlement to ensure that "the 'fiduciary obligation[s]' of the class representatives" have been met, *In re Dry*

-5-

*Max Pampers Litig.*, 724 F.3d at 718 (citing *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 917 (7th Cir. 2011), the Court must also be mindful that "[j]udges should not substitute their own judgment" for that of the parties in their assessment of the risks of litigation or the "as to optimal settlement terms for the judgment of the litigants and their counsel," *Robinson v. Shelby Cty. Bd. of Educ.*, 566 F.3d 642, 649 (6th Cir. 2009) (quoting *Armstrong v. Bd. of School Directors of City of Milwaukee*, 616 F.2d 305, 319 (7th Cir. 1980)).

The Court also finds that settlement of the collective action claims is appropriate and will be approved by the Court because the parties diligently litigated a *bona fide* dispute over the claims for unpaid hourly wages, and the proposed settlement distribution represents a reasonable compromise of those claims. The right to payment at the minimum hourly wage mandated under the FLSA ordinarily is not one that may be waived or compromised by an employee's consent. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 713 (1945). However, "[w]hen employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. United States Dep't of Labor*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). In this case, the Court finds that the settlement embodies "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1355.

Plaintiff's counsel has requested, and the defendant agrees to pay, an attorney's fee of $230,000, of which $6,375.38 represents reimbursement for costs expended. Attorney's fee awards in class actions are governed by Rule 23(h), which permits the Court to "award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." The fees requested and agreed by the parties are appropriate under both the percentage-of-common-benefit

2:16-cv-10332-DML-EAS   Doc # 132   Filed 12/22/16   Pg 7 of 9   Pg ID 3997

and lodestar methods of assessment. Both methods are acceptable as a means of evaluating the reasonableness of attorney's fee requests, but the Court must furnish reasons for choosing one over the other. *Rawlings v. Prudential–Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). The objective in such cases is to "make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Ibid.* In making the choice of methods, the Court must be mindful that "[t]hese two measures of the fairness of an attorney's award — work done and results achieved — can be in tension with each other. The lodestar method of calculating fees 'better accounts for the amount of work done,' whereas 'the percentage of the fund method more accurately reflects the results achieved.'" *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016) (citing *Rawlings*, 9 F.3d at 516).

Here, the plaintiff has submitted documents verifying that the lodestar fee would amount to $264,943.35, based on a blended average hourly rate of $409, which the Court finds to be reasonable, warranted, and customary in the legal community among lawyers with similar experience. The hours expended were reasonable and necessary to prosecute this case. The lodestar, although not the better method to determine the attorney's fee, provides a valuable cross-check in the amount requested, which represents a third of the potential gross recovery and creation of the common benefit fund. Although the entire negotiated fund will not be paid under the settlement, the Sixth Circuit "has held that class plaintiffs' 'right to share the harvest of the lawsuit upon proof of their identity, *whether or not they exercise it*, is a benefit in the fund created by the efforts of class representatives and their counsel.'" *Gascho*, 822 F.3d at 278 (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980)) (emphasis added). Despite its earlier reservations

-7-

expressed on the record at the fairness hearing, the Court now finds the fee request reasonable and will approve it.

Accordingly, it is **ORDERED** that the plaintiffs' motion for approval of settlement and plan of allocation [dkt. # 128] is **GRANTED** for the reasons stated on the record.

It is further **ORDERED** that the settlement agreement and plan of allocation is **APPROVED**.

It is further **ORDERED** that the individual who sent a request for exclusion from the class is hereby deemed excluded from the class and is not bound by, nor may he participate in, the class settlement.

It is further **ORDERED** that Simpluris, Inc. of Costa Mesa, California is **APPOINTED** as the administrator of the settlement fund.  The administrator shall receive, disburse, and account for the settlement proceeds as provided by the formula for distribution of the settlement fund set forth in the settlement agreement.  Class Counsel shall provide and file with the Court and the defendants a report setting forth the proposed distribution of all funds paid by the defendants as called for in the settlement agreement upon completion of the evaluation of the requests for payment received from class members.  After final distribution, class counsel shall file with the Court a certificate that the settlement fund has been disbursed according to the plan, or that funds remain undistributed, as the case may be.

It is further **ORDERED** that a banner award in the amount of $5,000 is approved for and may be distributed to the named plaintiff, Chelsea Bourne.

It is further **ORDERED** that Class Counsel's requested fees and hourly rates in the amount of $223,624.62 and litigation expenses and costs in the amount of $6,375.38 is **GRANTED**.

It is further **ORDERED** that this action is **DISMISSED WITH PREJUDICE**; provided, however, that this Court retains jurisdiction over all matters relating to the administration of the settlement agreement, including allocation and distribution of the settlement fund.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   December 22, 2016

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 22, 2016.

s/Susan K. Pinkowski
SUSAN K. PINKOWSKI

---